IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:14-430-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| BERNARD CLARK | ) | |
| _____ | ) | |

  This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 1046).  The defendant contends that the ongoing Covid-19 pandemic, especially in a correctional setting, constitutes an extraordinary and compelling reason for consideration of his release.  He also contends that if he were to be sentenced today, his sentence would be significantly different due to intervening changes in sentencing law.  Finally, he raises additional arguments which the court will address below.

  The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release.  The defendant replied to the government's response.

  The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties.  For the reasons which follow, the defendant's motion is respectfully denied.

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the

2

factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*,

836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

### *Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a

4

request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government concedes that the defendant has exhausted his administrative remedies. Thus, the court will proceed to review the matter on the merits.

DISCUSSION

*Procedural History*

The defendant was one of 12 defendants named in a 34-Count Indictment filed in this court in June 2014. The defendant was named in the following Counts:

| | |
|---|---|
| Count 1: | (Lesser included offense) Conspiracy to Possess with the Intent to Distribute 500 Lesser-included Grams or More of a Mixture or Substance Containing Cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 851; and |
| Counts 9, 25, 33: | Knowing and intentional use of a communication facility, that is, a telephone, to facilitate the commission of a felony under the Controlled Substances Act, to wit: conspiracy to distribute, possession with intent to distribute, and distribution of cocaine and cocaine base (commonly known as "crack" cocaine), both Schedule II controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846. |

In January 2015, the government filed an information 21 U.S.C. § 851 based upon three prior convictions on his record. Ultimately, the defendant pleaded guilty to Count 1 and the government dismissed the remaining charges.

At sentencing, the Presentence Report (PSR) (ECF No. 610) revealed that the defendant's total offense level was 34 and his criminal history category was VI. He was deemed to be a career offender under the law that existed at that time. This yielded a

Guideline sentencing range of 262 to 327 months.

At sentencing, on motion of the defendant, and over the strong objection of the government, this court granted a 12-month variance and sentenced the defendant to 250 months incarceration. Thereafter, the government filed a downward departure motion, which this court granted, reducing the defendant's sentence further down to 168 months.

I. *Motion for Compassionate Release*

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

6

In his motion for compassionate release, the defendant first contends that the covid-pandemic, which he describes as a "growing pandemic" especially in "the confines of a correctional institution" constitutes an extraordinary and compelling reason for release.

In its response, the government notes that the defendant has been vaccinated for COVID-19. The government also cites the efforts of all federal correctional institutions to deal with the COVID-19 pandemic.

The court finds that the defendant's arguments here are unpersuasive and not an extraordinary and compelling reason to consider release.

## II.  *Career Offender Enhancement*

In a second argument, the defendant suggests that his sentence will be significantly different if he were sentenced today. He contends that under the Fourth Circuit decision in *United States v. Norman*, 395 F.3d 232 (4th Cir. 2019), he would no longer qualify as a career offender.[2]

With commendable candor, the government concedes that the defendant's case would be governed by the *Norman* decision if he were sentenced today. Thus, the government contends that if the defendant were sentenced today, he would face a Guideline range of 120 to 150 months.

After making this concession, the government strongly urges that this court deny the defendant's motion after considering the complete record in this case, including the § 3353(a)

---

[2] The defendant suggests in his documents, but does not strenuously argue, that his § 851 predicates would no longer support the mandatory 10-year mandatory sentence. Because the low end of the non-career offender Guidelines is also 120 months, the § 851 enhancement has no significant impact on this case.

sentencing factors and the defendant's post-sentencing conduct.

Although the court is unpersuaded that the COVID-19 pandemic, standing alone, constitutes an extraordinary and compelling reason for the defendant's release (especially in light of the fact that the defendant has no medical problems which might be exacerbated by the pandemic), the court will nevertheless conclude that the defendant has, in fact, demonstrated an extraordinary and compelling reason in terms of the sentencing disparity that exists in this case.   As indicated above, the government concedes that the defendant would no longer be a career offender under *Norman* because the instant conviction was for conspiracy to commit a drug trafficking crime.

But the court's inquiry does not end here. This court must now turn to an individualized assessment of the defendant's situation, with particular emphasis on the §3553(a) sentencing factors, the defendant's post-sentencing behavior, and other relevant information.

### *Factors Under § 3553(a)*

1. *Nature and Circumstances of the Offense.*   The investigation in this case revealed that the defendant purchased cocaine from Antonio Williams, a king pin of the drug operation who went by the nickname "Dollar Bill."   Wiretap recordings reveal that Dollar Bill was a multi-kilogram cocaine dealer from the Batesburg-Leesville, South Carolina who supplied a large number of co-conspirators with cocaine, including the defendant. Ultimately, the defendant was held accountable for 4,734.45 grams of powder cocaine and 149.7 grams of crack cocaine.   These translated to a marijuana equivalent of 1,481.5

kilograms.

2.  *History and Characteristics of the Defendant.*   Clark has a lengthy criminal history which includes convictions such as violation of the Controlled Substance, Drug, Device and Cosmetic Act (multiple convictions); criminal conspiracy; failure to stop at a stop sign; possession with intent to deliver a controlled substance, possession with intent to distribute marijuana – 1st offense; simple possession of marijuana; no driver's license; operating/permitting operation of a vehicle without first paying an uninsured vehicle fee; public disorderly conduct; driving without a license – 1st offense; and giving false information to law enforcement, a fire department, or a rescue department.

The defendant also has outstanding warrants issued by the Berkley County Sheriff's office for evading arrest, disregarding a stop sign, and driving under suspension.  The government filed an Information with this court which notified the defendant that he was subject to enhanced penalties pursuant to 21 U.S.C. § 851 based on his prior convictions for criminal (drug) conspiracy, two counts of possession with intent to distribute (cocaine), and possession with intent to distribute marijuana – 1st offense.

The defendant is single, having never married, and has three children from his relationship with a female companion.  Prior to his incarceration, the defendant indicated he was residing in Lexington, SC, with his companion, two of their children, and their 4-year-old grandson.   The defendant indicated his physical health is "ok," and stated he has a history of high blood pressure; however, he indicated he is not currently taking any medication for this condition.  The defendant also stated he suffers from arthritis in his neck

and shoulders and is currently taking the prescription medication Mobic (anti-inflammatory that can treat osteoarthritis and rheumatoid arthritis).

The defendant was 40 years old at the time of the commission of the offense in question here and he is currently 52 years old. He has served 7.5 years of the 14-year sentence imposed by this court. While incarcerated, he has incurred three disciplinary infractions for use of drugs/alcohol, possessing drugs/alcohol, and refusing to obey an order.

Commendably, the defendant has taken 35 educational and vocational courses while incarcerated. These courses include such useful subjects as behavior modification, creating business plans, running a CDL business, goal setting, and positive attitude.

3. *Seriousness of the Crimes*. As evidenced by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in

considering the present motion.

7.  *Need to Avoid Unwarranted Disparity*.   Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants.

In sum, the § 3553(a) factors discussed above, as well as defendant's post-sentencing conduct lead to the conclusion that the defendant's sentence should not be disturbed.

Although the COVID-19 pandemic is of less concern than it has been in the past, this court has nevertheless determined that the defendant has demonstrated and extraordinary and compelling reason for his release in terms of the sentencing law changes that have taken place since he was sentenced in November 2016.   In particular, the government concedes that if the defendant were sentenced today, he would no longer be a career offender.  *United States v. Norman, supra*.

*Norman* has been held by the Fourth Circuit to not be retroactive.  However, in *United States v. McCoy*, the Fourth Circuit Court of Appeals held that, when considering compassionate release requests, this court may consider the question of whether the defendant's sentence would be substantially different today under intervening changes in sentencing law.

*McCoy* was perhaps the most significant sentencing decision handed down by the Fourth Circuit in recent years.  In *McCoy*, application of non-retroactive provisions of the First Step Act regarding "stacked" sentences under § 924(c) would have shortened the defendants' sentences by a full 30 years. And, for the reasons set forth in the *McCoy*

decision, the Court held that the district court below had not erred when it reduced the sentences of all four of the defendants to time served.

Although *McCoy* applied to "stacked" sentences under § 924(c), and not to the career offender Guidelines, the rationale employed by the court in that case would apply here. Indeed, the government concedes that the defendant would no longer be a career offender and at a new Guideline range, removing the career offender determination, would now be 120 to 150 months.

But to say that the central holding in *McCoy* overlaps with defendant's claims here is not dispositive of the issue. The Fourth Circuit in *McCoy* went to great lengths to emphasize particular circumstances presented in that case and, on more than one occasion, noted that the sentence reductions approved in that case were the product of "individualized assessments" of each individual defendant's sentence. *Id*. at 286.

From the foregoing, it is clear that the *McCoy* decision authorizes,[3] but does not require, this court to apply non-retroactive sentencing changes to the defendant's case.

With this principal established, the court turns to the specific facts in the defendant's case to provide the individualized assessment called for in *McCoy*. First, it cannot seriously be argued that the defendants in *McCoy* were similarly situated to the defendant here. *McCoy* was only 19 years old at the time of the commission of his crime and his only prior

---

[3] This court has not hesitated to apply *McCoy* and enter substantially lower sentences when the facts of the individual case called for such a reduction. *See, e.g., United States v. Dyches*, Cr. No. 8:06-136-JFA (order entered August 9, 2021, ECF No. 335, reducing the defendant's sentence by 164 months by "unstacking" multiple § 924(c) convictions).

12

conviction was for reckless driving. In the three other cases, the defendants were between 22 and 24 years old at the time of their offenses.

One of those defendants had no criminal history and another had one minor prior conviction for which he served no jail time.

Here, the defendant was 40 years old at the time of the commission of his crimes. Also, he has an extensive criminal record. He has been a major narcotics dealer since the early 1990s. All of the defendants in *McCoy* had received sentences of 45 years. Each defendant had served approximately 25 years in prison. Here, Clark's sentence was 14 years and he has served only 7.5 years (approximately 50%) of his sentence. The then-applicable stacking regime in *McCoy* increased the defendants' sentences by 30 years. Here, the career offender enhancement moved defendant's Guideline range from 162 to 327 to 120 to 150 months. Also, after this court issued a 12-month variance at sentencing, the imposed sentence (150 months) was actually within the defendant's Guideline range had he not been determined to be a career offender. This is a far cry from the 30-year difference in *McCoy*.

The *McCoy* Court emphasized the defendants' post-sentencing conduct and rehabilitation. Here, the defendant's disciplinary record is blemished as indicated earlier in this order.

III. *Additional Arguments by the Defendant*

The defendant also raises his lack of significant prison time served prior to his current stint as a justification for his immediate release. This court has carefully considered this argument and rejects it. The fact that the defendant has committed crimes in the past, and

13

received little, if any, prison time as a result, clearly demonstrates that he does not respect the law and that earlier efforts at leniency have been counterproductive. Thus, although the court is fully aware of this argument, it is respectfully rejected.

The defendant next argues that he has never been convicted of a "violent" crime. While this is true, the fact remains that the defendant has numerous convictions on his record for narcotics related offense, beginning in 1990 when the defendant was 20 years of age and continuing until July 2004. His most recent conviction involved driving without a license and giving false information to the law enforcement officer. Thus, although the court will acknowledge that the defendant's prior crimes were not violent, they were nevertheless serious.

The defendant next contends that he was involved in the drug conspiracy in this case only because of his need to feed his substance abuse habit. While the PSR reveals that the defendant has abused marijuana and cocaine over the years, the court does not find that this is a sufficient basis to modify the defendant's sentence. As indicated previously, the defendant was convicted of numerous narcotics distribution offenses in state court before the offense at issue in this case. These prior convictions and sentences apparently did not affect his personal behavior.

The defendant also points out that the BOP considers the defendant to be "a low security risk." Additionally he attaches a letter from a UNICOR recycling technician suggesting that the defendant's work at the UNICOR electronic recycling factory has been exemplary. Once again, the court has carefully considered the argument advanced in these

submission, but remains unconvinced that they constitute sufficient grounds for alteration of his sentence.

## CONCLUSION

The defendant's release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The motion (ECF No. 1046) is respectfully denied.

IT IS SO ORDERED.

August 23, 2022                          Joseph F. Anderson, Jr.
Columbia, South Carolina                 United States District Judge

15